UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| OTHA L. TOLLIVER o/b/o MELVIN L. TOLLIVER | * | CIVIL ACTION NO.  11-0039 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

**REPORT AND RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

**Background & Procedural History**

Melvin L. Tolliver protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on August 16, 2005. (Tr. 86-88, 101).[1]  He alleged disability as of June 1, 2002, because of poor circulation in his left leg, and because he was a slow learner.  (Tr. 101, 105).  The applications were denied at the initial stage of the administrative process.  (Tr. 55, 66-69).  Thereafter, Tolliver requested and

---

[1]  Tolliver filed prior applications for benefits in 1993 and 1996, which were denied initially, and not further appealed.  (Tr. 150-151).  He also filed additional applications in March 2003, which were denied by an Administrative Law Judge on October 4, 2004.  (Tr. 45-51).  He unsuccessfully appealed the ALJ's decision to the Appeals Council.  *See* Tr. 102, 150.  There is no indication that he further appealed the denial to the district court.

received an August 3, 2006, hearing before an Administrative Law Judge ("ALJ").  (Tr. 250-264).  However, in a November 6, 2006, written decision, the ALJ determined that Tolliver did not have a medically determinable impairment, and therefore, was not disabled under the Act.  (Tr. 58-65).  Tolliver appealed the adverse decision to the Appeals Council.  On March 23, 2007, the Appeals Council granted Tolliver's request for review, vacated the ALJ's decision, and remanded the case for further proceedings.  (Tr. 77-79).

Meanwhile, on or about January 26, 2007, Tolliver filed a new application(s) for disability benefits, which the state agency apparently approved with an onset date of January 26, 2007.  *See* Tr. 267-268.  Thus, at the September 21, 2007, hearing following the Appeals Council remand, the ALJ acknowledged that the remaining issue before him, for purpose of the 2005 applications, was to ascertain whether an earlier disability onset date was warranted.  *See* Tr. 265-277).  In a November 20, 2007, partially favorable decision, the ALJ awarded benefits with a disability onset date of October 24, 2006.  (Tr.  11-24).  However, he denied disability for the period from October 5, 2004,[2] until October 24, 2006, finding at step four of the sequential evaluation process that Tolliver was able to return to his past relevant work as a custodian.  *Id*.

Tolliver appealed the adverse decision to the Appeals Council, but tragically passed away on June 4, 2009, before the Appeals Council could act.  *See* Pl. Brief, pg. 6.  On December 2, 2010, the Appeals Council denied Tolliver's pending request for review; thus, the ALJ's decision became the final decision of the Commissioner.  (Tr. 6-8).

On January 13, 2011, Tolliver's surviving spouse, Otha L. Tolliver, filed the instant complaint for review before this court.  She alleges the following errors,

(1) the ALJ failed to apply the Psychiatric Review Technique pursuant to 20 C.F.R. §

---

[2] The day after the ALJ's denial of Tolliver's prior applications.  *See* Tr. 15.

    416.920a;

(2) the Commissioner erred by failing to consult a medical expert to establish the claimant's disability onset date; and

(3) the ALJ's residual functional capacity assessment is not supported by substantial evidence.

### Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis;

under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### Analysis

I.  **Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that Tolliver did not engage in substantial gainful activity during the relevant period. (Tr. 17). At step two, he found that from October 5, 2004, through October 23, 2006, Tolliver suffered severe impairments of leg and shoulder pain. *Id*. He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 18).

When evaluating the severity of mental impairments, the regulations require that a psychiatric review technique form be completed during the initial and reconsideration phases of the administrative review process. 20 C.F.R. § 1520a(e); 20 C.F.R. § 416.920a. The psychiatric review technique rates the degree of functional limitation in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 1520a(c), 920a(c). The ALJ must incorporate the pertinent findings and conclusions of the psychiatric review technique into his decision. *Id*. In the Fifth Circuit, however, an ALJ's failure to complete the psychiatric review technique is a procedural error that does not require remand, provided the error did not affect a party's substantial rights. *McGehee*

5

*v. Chater*, 1996 WL 197435, *3  (5th Cir. Mar. 21, 1996) (unpubl.) (citing, *Maya v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1984)).

 Here, the ALJ apparently did not apply the psychiatric review technique because he determined that Tolliver did not have a medically determinable mental impairment.  (Tr. 20).  The ALJ's determination, however, does not precisely coincide with the December 7, 2005, findings of the state agency psychologist, William Berzman, Ph.D., who opined that although Tolliver suffered from low-level cognitive ability (i.e. a medically determinable mental impairment), the impairment was not severe.  *See* Tr. 171-184.  Berzman rendered his opinion in the context of the psychiatric review technique, after reviewing the August 17, 2004, mental status examination administered by E. H. Baker, Ph.D., and Dr. Hebert's impressions from his October 25, 2005, physical examination.  *Id*.

 Although Dr. Berzman's opinion undermines the ALJ's determination that Tolliver did not have a medically determinable mental impairment, it does provide substantial support for a finding that Tolliver's mental impairment was not severe.  Thus, the ALJ's failure to apply the psychiatric review technique does not materially affect the decision, and was harmless error.  *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (procedural perfection in administrative proceedings is not required); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights).

 Nonetheless, the court appreciates plaintiff's argument that Drs. Berzman, Baker, and Hebert may have misinterpreted Tolliver's presentation and demeanor as malingering, when, in fact, he may have been suffering from dementia, alzheimer type, that had worsened between October 2005 and October 2006.  *See* Tr. 202-206.  Because this matter is being reversed on other grounds, see discussion, *infra*, upon remand, the Commissioner may consider this

additional evidence when evaluating the severity of plaintiff's mental impairment, and, if warranted, consult a medical expert (psychologist or psychiatrist) to review the additional evidence and issue an opinion regarding the severity of the claimant's mental impairment(s) during the relevant period.

The court also observes that the ALJ seemingly determined that Tolliver's illiteracy was a non-severe mental impairment because it was a lifelong condition that did not impair Tolliver's ability to perform past relevant work. (Tr. 20). However, while Tolliver's illiteracy apparently did not prevent him from performing his past relevant work *as he performed it*, his inability to read and write may have impaired his ability to perform past relevant work *as the work is generally performed in the national economy*.[3]

Here, of course, the ALJ determined that the claimant was able to perform his past relevant work as a custodian, as the work is generally performed in the national economy. (Tr. 22). Moreover, although the ALJ consulted a vocational expert to classify plaintiff's past relevant work, he did not ask her to contemplate a claimant who was unable to read and write. The ALJ also did not cite to any other vocational source, *e.g.*, the DICTIONARY OF OCCUPATIONAL TITLES, to support his finding that illiteracy did not impact Tolliver's ability to perform past relevant work, as it is generally performed.

Thus, to the extent that Tolliver's illiteracy is a symptom of his mental impairment, it could have impacted the ALJ's step four determination and should have been included in the

---

[3] Past relevant work is defined as "the actual demands of past work or 'the functional demands ... of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61) .

ALJ's residual functional capacity assessment.[4] The ALJ may address this issue upon remand.

## II. Residual Functional Capacity

The ALJ next determined that, prior to October 24, 2006, Tolliver retained the residual functional capacity to perform the full range of medium work. (Tr. 18).[5] Beginning on October 24, 2006, however, the ALJ determined that Tolliver retained the residual functional capacity for the full range of sedentary work. (Tr. 21-22). As plaintiff aptly argues, the ALJ's decision is

---

[4] The error is not harmless, because plaintiff's past relevant work as a "custodian," as he performed the job, exceeded the six hour maximum standing requirement for medium work. *See* 106-107.

[5] Medium work is defined and explained by Social Security Ruling 83-10:
>  [t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
>  The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist). Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward). However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling 83-10.

flawed on two interrelated grounds.

>  As recognized by the Fifth Circuit,
>
>  in cases involving slowly progressive impairments, when the medical evidence regarding the onset date of a disability is ambiguous and the [Commissioner] must infer the onset date, SSR 83-20 requires that that inference be based on an informed judgment. The [Commissioner] cannot make such an inference without the assistance of a medical advisor."

*Spellman v. Shalala*, 1 F.3d 357, 362 (5th Cir. 1993).[6]

In addition, to be "informed," the Commissioner's judgment must have a legitimate medical basis. SSR 83-20.

In this case, the ALJ held that as of October 24, 2006, Tolliver's residual functional capacity was reduced to the sedentary level, which rendered him disabled at step five of the sequential evaluation process. The ALJ derived this reduced residual functional capacity by deciding to credit Tolliver's allegations regarding his symptoms and limitations as of October 24, 2006, which was the date that Tolliver went to the emergency room with complaints of chronic non-productive cough, with recent nose bleeds, and sinus pain. (Tr. 198-200). Also, a chest x-ray taken in conjunction with the emergency room visit confirmed a probable neoplasm and mediastinal lymphadenopathy. (Tr. 201). By December 5, 2006, Tolliver had received a diagnosis of Stage IIIB, T4, N3 M0, adenosquamous carcinoma of the right upper lobe of the lung. (Tr. 225).

It is not clear from the ALJ's decision why Tolliver did not meet listings 13.14 or 13.15 by the time of his October 24, 2006, x-ray. *See* 20 C.F.R. § 404, Subpart P, App. 1, Sections 13.14-15. Furthermore, the regulations contemplate that disability may be established prior to

---

[6] Social Security Rulings are "binding on all components of the Administration." *Id.* (citation omitted).

the date of the evidence demonstrating that a malignancy meets a listing. § 13.00J, 20 C.F.R. § 404, Subpt. P, App. 1. To do so, the Commissioner must consider: 1) the type of malignancy and its location; 2) the extent of involvement when the malignancy was first demonstrated; and 3) the claimant's symptoms. *Id*. Also, Social Security Ruling 83-20, specifically provides that at

> [t]o establish onset of disability prior to the time a malignancy is first demonstrated to be inoperable or beyond control by other modes of therapy (and where prior evidence is nonexistent) requires a medical judgment by a physician. (At the hearing level, the ALJ should obtain an expert opinion from a medical source.) This judgment is based on medically reported symptoms, the type and location of the specific malignancy, and extent of involvement when first demonstrated.

SSR 83-20.

Rather than consulting a medical expert to assist with the disability onset determination, the ALJ decided that Dr. Hebert's findings from his October 25, 2005, physical examination should govern Tolliver's residual functional capacity until the time that the October 26, 2006, x-ray confirmed that Tolliver had cancer.

The court discerns at least two obstacles to this approach. First, it not clear that Dr. Hebert opined that Tolliver was capable of medium work. As Dr. Hebert is wont to do, he concluded his examination findings by opining that "medically, [he] saw no reason why [Tolliver] could not do routine walking, sitting, standing, carrying, and lifting at the present time." (Tr. 168-170). The difficulty with Hebert's evaluation, however, is that he does not explain what he means by "routine." Does this mean that the claimant retains the exertional capacity for light, medium, or heavy work? Alternatively, does it mean that he has no significant limitation of functioning at all?

The ambiguity inherent in Dr. Hebert's report is confirmed by the two decisions issued by

the ALJ in this case. In his original decision that was vacated by the Appeals Council, the ALJ interpreted Hebert's report as indicating that Tolliver did not have a medically determinable impairment. (Tr. 61-65). In the ALJ's current decision, the same evidence inexplicably supports an exertional capacity for medium work. Furthermore, plaintiff testified that, as he performed his past relevant work, he was required to stand for seven hour per day and crawl for six hours. Does Dr. Hebert's impression that Tolliver could perform "routine" exertional activities include the ability to perform these additional job functions?[7]

It is apparent, instead, that the ALJ autonomously derived the exertional component of plaintiff's residual functional capacity, at least for the period prior to October 24, 2006. However, in the absence of any valid medical assessment or other corroborating evidence to support the ALJ's residual functional capacity determination, the court is constrained to find that the ALJ's assessment is not supported by substantial evidence. *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley v. Chater,* 67 F.3d 552, 557 -558 (5th Cir. 1995) (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by

---

[7] Moreover, it is manifest that although Dr. Hebert found Tolliver to be believable, he still thought that Tolliver was malingering. Hebert's opinion might well be subject to change given the later medical findings that plaintiff suffered from cancer, and possibly dementia, alzheimer type. This issue may be explored upon remand.

substantial evidence).

Another obstacle to giving effect to Hebert's ambiguous opinion for the period prior to October 26, 2006, is that the record references an April 8, 2004, chest x-ray that uncovered a 2 cm mass in the superior aspect of the right hilum of Tolliver's lung. (Tr. 50). The x-ray was taken in conjunction with an earlier physical examination administered by Dr. Hebert for purposes of Tolliver's prior application(s), and suggests that Tolliver's lung cancer may have been present as early as April 8, 2004. If so, and if, as the ALJ stated, he decided to credit the severity of Tolliver's allegations only as of the date that his cancer was confirmed by x-rays, the same rationale may support an earlier disability onset date. This evidence further confirms the need, on remand, for the ALJ to consult a medical expert (an oncologist), who can review the medical record and answer relevant questions regarding the disability onset date.[8]

### III.     Step Four

Because the foundation for the Commissioner's step four determination was premised upon a residual functional capacity assessment that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff was not disabled during the relevant period also is not supported by substantial evidence.

---

[8] The record does not entirely favor plaintiff, however. The court observes that according to notes from Tolliver's October 24, 2006, visit to the emergency room, he inexplicably continued to smoke one and one-half packs of cigarettes per day, despite having been warned by his doctor to cease smoking some four years earlier. (Tr. 198-200). While Tolliver's disregard of medical advice may not meet all of the requirements to warrant a finding of not disabled under 20 C.F.R. § 404.1530, it may be an indication to the reviewing oncologist (upon remand) that prior to October 2006, Tolliver's symptoms were not that severe because they did not cause him to cease smoking.

## Conclusion

For the above-stated reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 23rd day of January 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE